# EXHIBIT A

HEARING DATE: MAY 10, 2011 AT 2:30 PM CENTRAL
OBJECTION DATE: MAY 5, 2011

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INTERSTATE BAKERIES | ) | Case No. 04-45814 (JWV) |
| CORPORATION, et al., | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |

## MOTION OF THE TRUSTEE OF THE IBC CREDITORS TRUST SEEKING AN ORDER TO DISALLOW CERTAIN NONRESPONDING CREDITOR BENEFICIARIES FROM FUTURE DISTRIBUTION OF TRUST RECOVERIES FOR FAILURE TO COMPLY WITH TAX RELATED OBLIGATIONS

U.S. Bank National Association, in its capacity as trustee ("Trustee") of the IBC Creditors Trust (the "Trust"), by and through its undersigned counsel, files this motion (this "Motion") seeking an Order of this Court to disqualify and exclude beneficiaries ("Beneficiaries") from their interest in the Trust who have failed to comply with certain tax-related obligations and to disqualify such Beneficiaries from receiving future distribution(s), if any, from the Trust in accordance with the IBC Creditors Trust Agreement (the "Trust Agreement"). The relief sought herein is consistent with the terms of the Debtors' Amended Plan, the Trust Agreement, and in short, results from these Beneficiaries' own failure to respond to the Trustee's requests for necessary tax information, despite numerous requests to do so. In further support, the Trustee states as follows:[1]

---

[1] Certain terms used in this paragraph are defined later in the Motion. Where terms in this Motion are not defined, they shall have the meaning ascribed to them in the Trust Agreement.

1925392.11

## **Background Facts**

A. <u>The Debtors' Bankruptcy</u>

1.      On September 22, 2004, Interstate Bakeries Corporation and seven[2] of its subsidiaries and affiliates (the "<u>Original Debtors</u>") each filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "<u>Bankruptcy Code</u>"). Furthermore, on January 14, 2006, the ninth debtor, Mrs. Cubbison's Foods, Inc. ("<u>Mrs. Cubbison's</u>"), also filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code (collectively, Mrs. Cubbison's and the Original Debtors are the "<u>Debtors</u>" and individually, each is a "<u>Debtor</u>").

2.      On October 31, 2008, the Debtors filed an Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and its Affiliated Debtors and Debtors-in-Possession (the "<u>Amended Plan</u>") (Docket No. 11488). Pursuant to the hearing before this court on December 5, 2008, this Court entered an Order (Docket No. 11698 in the Main Case), confirming the Amended Plan.

B. <u>The Trustee's Authority and Total Claims in the Case</u>

3.      Pursuant to the Amended Plan, notice of the Trustee's appointment was served on November 25, 2008 (Docket No. 11596).

4.      On December 5, 2008, this court entered an Order Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bank. P. 9019 Approving Compromise of Controversies and Disputes Among Various Parties Including the Debtors, the Pre-Petition Lenders and the Official Committee of

---

[2] The following subsidiaries' and affiliates' chapter 11 cases are jointly administered with IBC's chapter 11 case: Armour and Main Redevelopment Corporation; Baker's Inn Quality Baked Goods, LLC; IBC Sales Corporation; IBC Services, LLC; IBC Trucking LLC; Interstate Brands Corporation ("<u>Brands</u>"); and New England Bakery Distributors, L.L.C.

1925392.11

Unsecured Creditors (Docket No. 11696).  Said Order established the Trust and transferred to it certain assets.

5.    The Trust became effective on February 3, 2009, the effective date under the Amended Plan.  That same day the relevant parties signed the Trust Agreement.

6.    Since February of 2009, the Trustee, on behalf of the Trust has worked diligently to liquidate the Trust Assets so that a distribution of Trust Recoveries may be made to Beneficiaries as soon as possible.  Pursuant to Section 7.10 of the Trust Agreement, the Trustee established a public website to provide information to Beneficiaries of the Trust.  The website can be accessed at: http://www.bmcgroup.com/ibc. The Trustee, through its consultant, BMC Group, Inc. ("BMC"), also maintains a toll-free telephone number, 888-909-0100, and trained staff to receive and answer inquiries from Beneficiaries.  The Trustee has issued its first annual report for the year ended February 3, 2010, and that Report can be accessed at the above-mentioned website.  As the most recent fiscal year ended recently on February 3, 2011, a second annual report is not yet available, but will be published at the above-mentioned website when completed.

7.    There are 8,493 scheduled claims and 4,547 claim records for a total of 13,040 unsecured claims in the above-captioned case (the "Total Claims").[3]  The aggregate value of the Total Claims is $445,432,967.08 (the "Aggregate Value of the Total Claims").[4]

C.  Distribution of Trust Recoveries and Tax Procedures in the Trust Agreement

8.    Article V of the Trust Agreement governs distribution of Trust Recoveries. Section 5.3 of the Trust Agreement states that the Trustee is not required to make distributions to Beneficiaries until the income available for distribution is sufficient, in the Trustee's discretion,

---

[3] Trustee makes not representations as to the allowed status of all or any of the Total Claims.
[4] Two of the Total Claims are for unknown amounts and the Trustee understands that they are being reviewed by the Debtors.

after consultation with the Trust Advisory Board, to justify the costs associated with making such a distribution and to permit the Trustee to discharge its remaining duties under the Trust Agreement.

9.  Section 11.19 of the Trust Agreement relates to certain tax procedures, and states:

> The Trustee may require any Beneficiary to furnish to the Trustee (i) its, his or employer or taxpayer identification number ("TIN") as assigned by the Internal Revenue Service, or (ii) in the case of any Beneficiary that is not a United States person for U.S. federal income tax purposes, a certification of foreign status on IRS Form W-8BEN or W-8ECI.  The Trustee may condition any Distribution to any Beneficiary upon receipt of such TIN or certification.  If any Beneficiary fails to provide the Trustee with a requested TIN or certification of foreign status, as applicable, within ninety (90) days after the request, such failure shall be deemed a waiver of such Beneficiary's interest in this Trust Agreement and rights to distribution hereunder.  Proceeds that would have been distributed to such Beneficiary shall be distributed pro rata to the other Beneficiaries. [emphasis added].

10.  This requirement that all Trust Beneficiaries respond to a request for certain tax identification information pursuant Section 11.19 of the Trust Agreement shall be referred to herein as the "Section 11.19 Requirement".

D.  The Trustee's W-9 Procedures

11.  Since February of 2010, the Trustee, in collaboration with, BMC and its legal counsel, has worked diligently to send requests to Beneficiaries for W-9s[5] in compliance with Section 11.19 of the Trust Agreement.  The Trustee's extensive efforts are summarized below, and supported by the Declaration of Terri Marshall, a Director of BMC, attached hereto as Exhibit A (the Trustee's efforts as described below shall collectively be referred to herein as the "W-9 Procedures").

---

[5] Though the term "W-9" is used throughout this Motion, the Trustee understands that many Trust Beneficiaries are foreign entities and therefore a W-9 is not applicable to them.  The Trustee uses the term "W-9" to constitute the form (which ever IRS form that may be) needed to comply with the Section 11.19 Requirement.

a.   The First W-9 Request. On or around August 3, 2010, BMC sent a letter to all Beneficiaries on behalf of the Trustee (the "W-9 Letter") requiring the Beneficiaries to complete and return an enclosed Form W-9 to the Trustee within ninety (90) days (the "W-9 Submission Deadline"). The first deadline was fixed as November 1, 2010 (the "Initial Deadline"). The W-9 Letter stated: "**If we do not receive your TIN, SSN or claim of exemption by November 1, 2010, you will not be entitled to receive your share, if any, of distributions from the Trust. Failure to return a completed IRS Form W-9 by the deadline will be deemed a waiver of your interest, if any, in the Trust. If your interest is waived, proceeds that would have been distributed to you will be distributed ratably to the other Beneficiaries of the Trust.**" The process implemented to locate all Beneficiaries, and send them the First W-9 Request, so that they were aware of the Initial Deadline was also extensive, and is summarized as follows:

i.   In February of 2010, BMC received access to the claims register maintained by Debtors' counsel (the "Stinson Claims Register"). The Stinson Claims Register is a large Microsoft Excel document containing a list of creditors with addresses. The Stinson Claims Register was created by the Debtors and their counsel. The Trustee understands that the addresses in the Stinson Claims Register are based on schedules and proofs of claims filed by creditors of the Debtors with this Court in the above-captioned Case, and that contact information in the Stinson Claims Register has been updated as the Debtors received updates from Beneficiaries.

1925392.11

    ii.  In March through July of 2010, BMC took the following steps with respect to the Stinson Claims Register (collectively, these steps are the "Synchronization") to ensure that as many Beneficiaries as possible would receive the First W-9 Request:

      1.  BMC identified and resolved problems by comparing the Stinson Claims Register to the database maintained by Kurtzman Carson Consultants, the Debtor's claims agent in the above-captioned case.

      2.  BMC identified and resolved additional data problems by working with Debtors' counsel on specific issues.

      3.  BMC verified and corrected, as necessary, all address information in the Stinson Claims Register that did not meet United States Postal Service mailing specifications.

      4.  BMC consolidated information for Beneficiaries with multiple claims to reduce or eliminate multiple First W-9 Requests.[6]

  b.  Results of the First W-9 Request. BMC sent 8,222 W-9 Letters as part of the First W-9 Request. BMC reviewed and recorded all of the responses it received from Beneficiaries as a result of the First W-9 Request. Out of the 13,034 Total Claims, BMC received approximately 4,000 responses. Approximately 1,000 of these 4,000 responses required a follow-up letter to clarify the information received by BMC in response to the First W-9 Request. 944 W-9 Letters were returned as "undeliverable" in response to the First W-9 Request. To the best of

---

[6] Of the 13,034 Total Claims, only 8,222 unique letters were sent to Trust Beneficiaries. BMC was able to reduce the need for multiple notices going to the same Trust Beneficiaries by grouping parties, first programmatically, and then manually where necessary.

the Trustee's and BMC's knowledge, 3,959 W-9 Letters were delivered to Beneficiaries who received them but failed to respond by the Initial Deadline. In sum, only about one-half of the Total Claims complied with the First W-9 Request.

c. The Second W-9 Request. Although the Trustee has no duty under the Trust Agreement to take extraordinary steps to locate Beneficiaries or to send additional information requests to Beneficiaries,[7] the Trustee, made significant attempts to locate Beneficiaries who did not respond to its First W-9 Request. On or around October 11th through 15th, 2010, BMC sent a second set of W-9 Letters to all non-responsive Beneficiaries (the "Second W-9 Request"). The Trustee provided a new opportunity for such Beneficiaries to respond, but kept the Initial Deadline of November 1, 2010. The process implemented by BMC to locate the non-responsive Beneficiaries was even more extensive than the process associated with the First W-9 Request, and it can be summarized as follows:

i. With respect to returned/undeliverable mail received from the First W-9 Request: BMC performed the following time intensive process:

---

[7] See Section 11.19 of the Trust Agreement which does not require multiple requests for taxpayer identification information. Furthermore, Section 5.4 of the Trust Agreement on "Method of Delivery of Distributions" states that "All distributions to Beneficiaries... shall be delivered to such Beneficiaries at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Reorganized Debtors or their agents, unless the Trustee has been notified in writing of a change of address...". Section 5.7 of the Trust Agreement on "Undeliverable Distributions" lends additional support that the Trust Agreement does not require the Trustee to track down Trust Beneficiaries if their address has changed – Beneficiaries are required to keep their addresses current with the Trustee. Nevertheless, the Trustee has gone beyond the requirements in the Trust Agreement to try and ensure that as many Beneficiaries as possible will be included in distributions.

1925392.11

1.  BMC reviewed the United States Post Office National Change of Address Database[8] in order to research each Beneficiary's current address (a "USPS Skiptrace").

2.  BMC used the Experian database of addresses[9] to research each Beneficiary's current address (an "Experian Skiptrace").

3.  BMC personnel hand-reviewed individual proofs of claims to determine if additional contact information on the claim could be utilized.

4.  Lastly, BMC personnel performed manual, individual searches for remaining Beneficiaries, utilizing internet tools to locate their current addresses.

ii.  Many beneficiaries responded to BMC that they were owed nothing or not the appropriate party, or they provided responses that required clarification on a case by case basis. BMC sent 1,006 additional letters to such Beneficiaries, seeking confirmation that such Beneficiary was disclaiming its interest in the Trust or seeking clarification about other information provided.[10]

iii.  The Second W-9 Request was sent to all Beneficiaries who failed to respond to the First W-9 Request notwithstanding the fact that there was

---

[8] BMC has access to certain USPS databases which contain addresses long after an individual or business has moved locations, but the forward order has ceased.

[9] Experian, one of the three main credit bureaus maintains databases of addresses and contact information that BMC has access to.

[10] There were a number of claims where BMC received a responsive W-9, however, the W-9 contained incomplete information (the "Incomplete Claims"). BMC, either in the Second W-9 Request, or in a later request, sent a letter seeking clarification on each of the Incomplete Claims. For 21 of the Incomplete Claims, BMC did not receive a response to their letter seeking clarification. These 21 claims are listed on Exhibit B attached hereto (as described below, the Non-Responsive Claims) and on Exhibit E attached hereto which list only those 21 Incomplete Claims.

no evidence of a delivery problem. The Trustee opted to give such Beneficiaries a second chance to comply with the Section 11.19 Requirement. 3,959 additional W-9 Letters were sent to such Beneficiaries.

d. <u>Efforts After the Second W-9 Request</u>. After the Second W-9 Request was mailed to all non-responsive Beneficiaries, 148 W-9 Letters were returned to BMC as undeliverable mail. BMC again utilized time-intensive, individual searches, including USPS Skiptraces and Experian Skiptraces, to find secondary addresses for such Beneficiaries. On November 4, 2010, BMC sent 134 more letters to these secondary addresses.

e. <u>Special Efforts Implemented for Bulk Claim Holders or Large Claim Holders</u>

    i. After implementing the foregoing time consuming and expensive W-9 Procedures, the Trustee noted a handful of non-responsive Beneficiaries that (i) held a significant number of claims, and/or (ii) held significant claim(s) in terms of dollar amount (the "<u>Distinctive Trust Beneficiaries</u>"). The Distinctive Trust Beneficiaries, with the exception of two or three entities, appear to be entities engaged in bankruptcy claim trading and that is why they are holders of a significant number of claims, a significant value of claims, or both. At the time these Distinctive Trust Beneficiaries were identified, the Trustee felt that they were significant because together, they accounted for approximately 75% of the Beneficiaries (by

claim amount) who were not in compliance with the Section 11.19 Requirement.[11]

ii.  Counsel to the Trustee or Terri Marshall of BMC researched to obtain phone numbers for each of the Distinctive Trust Beneficiaries and attempted to reach personnel from each of the Distinctive Trust Beneficiaries.    In all cases, the Trustee (through its counsel) was successful in reaching someone with knowledge of the claims in the above-captioned case.  The Trustee was able to obtain responses from four of the six Distinctive Trust Beneficiaries to reduce the dollar amount of non-responsive claims associated with these Distinctive Trust Beneficiaries by approximately $57,600,000.00.

iii.  With respect to a claim in the name of "Matthew Van Genderen" (one of the two non-responding Distinctive Trust Beneficiaries) (the "Van Genderen Claim") the Trustee's counsel, learned, from Debtors' counsel that this claim was a product of the Debtors settlement, in 2005, between Mitchell Fishlowitz, on behalf of himself individually and as a representative of a class of individuals similarly situated (the "Settlement Agreement").  On October 28, 2005 this Court approved the Settlement Agreement (Docket No. 4931).  The Settlement Agreement calls for payment of a $2,000,000 administrative expense claim and a $6,000,000 general unsecured claim.  Matthew Van Genderen of Rust Consulting is

---

[11] The Trustee's inclusion of certain Trust Beneficiaries in the Distinctive Trust Beneficiaries is admittedly arbitrary.  As the Court can likely imagine, it is a slippery slope as to who was and was not named as a Distinctive Trust Beneficiary.  The Trustee used good faith and its best efforts in naming Trust Beneficiaries that would ultimately yield the greatest reduction to the number of and dollar amount of claims that could be disqualified from the Trust, as requested in this Motion.

the claims agent for the settlement. The law firm of Spiro Moss Barness Harrison & Barge LLP in Los Angles, California is plaintiff's counsel. Counsel for the Trustee spoke with Mr. Van Genderen and an attorney at the Spiro Moss firm - both have been receiving BMC's W-9 Letters, and both were notified that the Trustee would be filing this Motion. Despite the passing of more than two weeks, counsel for the Trustee received no additional communication from Spiro Moss and Mr. Van Genderen and BMC has not received a Form W-9 for the Van Genderen Claim. Pursuant to the Court's Order on October 28, 2005, Bankruptcy Rule 7023 is made applicable.[12]   Additionally, pursuant to the Order, the proofs of claims of all individual settlement class members that were filed in the Debtors' cases were deemed "withdrawn with prejudice". Therefore, the Trustee has included the Van Genderen claim as a Non-Responsive Claim (defined below).

iv.   With respect to numerous claims in the name of Redrock Capital Partners LLP (the other of the two non-responding Distinctive Trust Beneficiaries) (the "Redrock Claims"), on February 21, 2011, counsel to the Trustee made contact with Craig Klein who acknowledge that he was affiliated with Redrock Capital. Mr. Klien was sent via email, a W-9 Letter so that Redrock could comply with the Section 11.19 Requirement. As of March 10, 2011, BMC received no W-9 with respect to the Redrock Claims. Therefore, the Trustee has included the Redrock Claims as Non-Responsive Claims (defined below).

---

[12] Paragraph 4 of the Order.

F.  The Collective Results of the Trustee's W-9 Procedures[13]

     12.   Beneficiaries that hold 10,233 of the 13,040 Total Claims, have now properly responded to a W-9 Letter (the "Responsive Claims").  Of the $445,432,967.08 in Aggregate Value of Total Claims, the aggregate value of the Responsive Claims is $422,735,225.85, or 95% of the Aggregate Value of Total Claims.  The Responsive Claims have met the Section 11.19 Requirement.

     13.   The Trustee has not received properly completed W-9 forms from 2,807 of the 13,040 Total Claims (the "Non-Responsive Claims").  Of the $445,432,967.08 in Aggregate Value of Total Claims, the aggregate value of the Non-Responsive Claims is $22,297,741.23, or 5% of the Aggregate Value of Total Claims.  The Non-Responsive Claims are listed in Exhibit B, attached to this Motion.  The Non-Responsive Claims are not in compliance with the Section 11.19 Requirement, despite the Trustee's considerable efforts, and therefore the Trustee requests that these Non-Responsive Claims be disqualified from the Trust as more specifically discussed below.

G.  Trust Beneficiaries Not Included in this Motion

     14.   Of the 13,040 in Total Claims, 1105[14] of them appear to be related to Trust Beneficiaries that the Trustee has deemed to be governmental in nature (the "Governmental Trust Beneficiaries").[15]  Many of the Governmental Trust Beneficiaries have responded with appropriate W-9 information, but 358 of the Governmental Trust Beneficiaries, listed in Exhibit

---

[13] The results reported in this Section are accurate as of Thursday March, 10, 2011.  To the extent that additional Responsive Claims are submitted after March 10th, they will be accepted, and those Responsive Claims will not be a part of the Final Non-Responsive Claims as described below.

[14] This is an estimate, based on the box checked and "other" information on Trust Beneficiaries' responsive W-9s.

[15] The Trustee and BMC make no representations that all governmental entities are included in the Governmental Trust Beneficiaries.  BMC and the Trustee used good faith and its best efforts to include all governmental entities in the Governmental Trust Beneficiaries.

12

C hereto have not responded (the "Non-Responding Governmental Trust Beneficiaries"). Notwithstanding the failure of these Beneficiaries, the Trustee is not seeking any relief with respect to their interests in the Trust at this time. The Trustee will continue to work with the Non-Responding Governmental Beneficiaries so that they are compliant with the Trust Agreement. However, as discussed below, the Trustee may, at a later time, request additional relief from this Court, disclaiming certain additional Trust Beneficiaries. If at that time, the Non-Responding Governmental Trust Beneficiaries have not complied with the Trust Agreement, the Trustee may request that they be disclaimed from the benefits of the Trust.

15.    As this Court is aware, the Trustee, on behalf of the Trust is pursuing approximately 230 avoidance actions pursuant to Sections 547 and 550 of the Bankruptcy Code (the "Preference Actions"). The Trustee has been very successful in resolving these claims through settlement, default judgments, and a judgment after trial. Most of the settlement agreements entered into by the Trustee and defendants in the Preference Actions contain a provision which allows the defendant to retain a § 502(h) claim for the amount of their settlement (the defendants that have retained a claim for the amount they settled a Preference Action for shall be referred to herein as "Preference Action Defendants").[16] The Trustee maintains documentation for all Preference Action Defendants. Though the Trustee has sent W-9 Letters to essentially all Preference Action Defendants that have settled as of December 31, 2010, the Trustee is not seeking any relief at this time with respect to any Preference Action Defendants to allow ample time for such parties to comply with the Section 11.19 Requirement. The Preference Action Defendants that have received a W-9 Letter, but have not yet complied

---

[16] The Preference Action Defendants do not include defendants in the Preference Actions that have not settled as of the date of this Motion. However, counsel to the Trustee, prior to filing this Motion made a good faith attempt to contact counsel for all defendants in the Preference Actions, if the Trustee is aware of counsel. Many of these non-settling defendants did provide appropriate W-9 documentation prior to the date of this Motion.

1925392.11

with the Section 11.19 Requirement are listed in <u>Exhibit D</u> hereto.  As with the Non-Responding Governmental Trust Beneficiaries, the Trustee may, if needed, at a later time, request additional relief from this Court, disclaiming certain additional Trust Beneficiaries.  If at that time, Preference Action Defendants have not complied with the Trust Agreement, the Trustee will request that they be disclaimed from the benefits of the Trust.

### <u>Procedure for Trust Beneficiaries with Non-Responsive Claims that would like to Comply with the Section 11.19 Requirement</u>

16.    All Beneficiaries with a Non-Responsive Claim will be served notice of this Motion at the address or addresses listed on <u>Exhibit B</u> attached hereto.  Specifically, the Beneficiaries who are listed on Exhibit B will be mailed a notice of this Motion, a copy of which is attached hereto as <u>Exhibit H</u> (the "<u>Notice</u>").[17]  The Notice provides a link to the BMC website where the Motion, in its entirety may be downloaded, it provides BMC's toll free number for questions or for copies of the Motion to be mailed to those without internet access, it notifies Beneficiaries that their claims or interests in the Trust will be disallowed and expunged in their entirety if they take no action, it provides instructions and a deadline for complying with the Section 11.19 Requirement, and it includes a W-9 Form.

17.    If any Beneficiary with a Non-Responsive Claim receiving this Motion would like to ensure that they are compliant with the Section 11.19 Requirement, they should (i) fill out the W-9 form attached hereto as <u>Exhibit F</u>, (ii) scan a copy of the completed W-9 form to ibc@bmcgroup.com and (iii) mail the original completed W-9 form to BMC Group Inc., Attn: Interstate Bakeries Claims Processing, PO Box 3020, Chanhassen, MN 55317-3020 (collectively, the "<u>Last Chance Procedures</u>").  The deadline for this procedure shall be **five days**

---

[17] The Trustee contemplated serving all Non-Responsive Claims listed in <u>Exhibit B</u> will this Motion in its entirety.  However, this Motion with exhibits is over 300 pages, and the cost of printing and mailing to all Non-Responsive Claims would have been approximately $50,000.

prior to the hearing date for this Motion, or May 5, 2011 the "Objection Deadline" or "Last Chance Deadline").

18.     If any Beneficiary with a Non-Responsive Claim complies with the Last Chance Procedures, by the Last Chance Deadline, the Trustee, four days prior to the hearing date for this Motion (May 6, 2011) will file with the Court a revised and redlined Exhibit B (list of Non-Responsive Claims) (collectively, the "Final Non-Responsive Claims"). The Trust will not mail this notice and list of Final Non-Responsive Claims to those Claims listed on Exhibit B, but will file with the Court and post on BMC's website. The Trustee will not seek disallowance of any claims where a Beneficiary complies with the Last Chance Procedures by the Last Chance Deadline.[18]

### Request for Relief

19.     By this Motion, the Trustee seeks an order from the Court forever barring, estopping and enjoining the Final Non-Responsive Claims from (a) receiving distributions from the Trust and (b) from receiving notices from the Trustee, or the Trustee's representatives on behalf of the Trust and (c) generally from any interest it may have under the Trust Agreement.

### Basis for Relief

20.     As indicated in the W-9 Procedures and the Trustee's efforts with respect to Distinctive Trust Beneficiaries, the Trustee has gone to great effort and expense to ensure that as many Beneficiaries as possible are compliant with the Trust Agreement.[19] These efforts have

---

[18] There may be situations where a Trust Beneficiary sends in information not in compliance with the Last Chance Procedures. The Trustee and its representatives will work with that Trust Beneficiary or Beneficiaries to ensure exclusion from the final list of Non-Responsive Claims, so long as that information is sent in by the Objection Deadline.

[19] The Trust's expenses with respect to the W-9 Procedures (not including the cost of drafting this Motion, contacting and working with the Distinctive Trust Beneficiaries and Preference Action Defendants) now exceeds $100,000.

1925392.11

gone well beyond what is required in the Trust Agreement.[20] Furthermore, as described in the W-9 Procedures, the 90-day deadline in the Section 11.19 Requirement has long passed as of the date of this Motion. The Trustee has not only complied with the Trust Agreement, but has gone above and beyond the requirements therein.

21.    If the Trustee, on behalf of the Trust obtains the relief requested in this Motion, significant financial resources will be saved as the Trustee will not have to (i) continue searching for Beneficiaries holding Non-Responsive Claims, (ii) incur the additional cost of sending these Beneficiaries tax documents (which are apparently going unnoticed) for the remainder of the Trust's existence, and (iii) send distribution checks to non-responsive Beneficiaries. This will save significant Trust funds, so that those funds may ultimately be distributed to compliant Beneficiaries.

22.    Under the Internal Revenue Code, there is a requirement to deduct and withhold tax for any reportable payment[21] if "the payee fails to furnish his TIN to the payor in the manner required." I.R.C. § 3406(a)(1)(A); *see also* Treas. Reg. § 31.3406(a)-1(b)(1) ("A payor of a reportable payment must deduct and withhold under section 3406 if— (i) [t]he payee of the reportable payment does not furnish the payee's taxpayer identification number to the payor.").

---

[20] *See* Section 11.19 of the Trust Agreement which does not require multiple requests for taxpayer identification information. Furthermore, Section 5.4 of the Trust Agreement on "Method of Delivery of Distributions" states that "All distributions to Beneficiaries... shall be delivered to such Beneficiaries at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Reorganized Debtors or their agents, unless the Trustee has been notified in writing of a change of address...". Section 5.7 of the Trust Agreement on "Undeliverable Distributions" lends additional support that the Trust Agreement does not require the Trustee to track down Trust Beneficiaries if their address has change – Trust Beneficiaries are required to keep their address current with the Trustee. Nevertheless, the Trustee has gone beyond the requirements in the Trust Agreement to try and ensure that as many Trust Beneficiaries will be included in distributions.

[21] The Trust's distributions to Trust Beneficiaries constitute "reportable payments" under the Internal Revenue Code. Pursuant to I.R.C. § 3406(b)(1), a "reportable payment" means "(A) any reportable interest or dividend payment, and (B) any other reportable payment." The term "other reportable payment" means "any payment of a kind, and to a payee, required to be shown on a return required under (a) section 6041 (related to certain information at source) . . . ." I.R.C. § 3406(b)(3)(A). In turn, section 6041 states that "[a]ll persons engaged in a trade or business and making payment in the course of such trade or business to another person, of . . . determinable gains, profits, and income . . . of $600 or more in any taxable year . . . shall render a true and accurate return to the Secretary. . . setting forth the amount of such gains, profits, and income . . . ."

As for the "manner required" set forth in section 3406 above, the Tax Regulations state that "[f]or accounts, contracts, or relationships subject to information reporting under section 6041 . . . , the payee must furnish the payee's taxpayer identification number to the payor either orally or in writing." Treas. Reg. § 31.3406(d)-1(d). Despite permitting payees to provide their TIN orally, fully completed and executed W-9 Forms are necessary to protect the Trust against any potential liability for a tax imposed under section 3406. *See* Treas. Reg. § 31.3406(h)-3(e)(1) (providing that payor cannot be held liable for a tax imposed under section 3406 if it reasonably relies on a W-9 Form provided by payee).  Thus, compliance with the Section 11.19 Requirement, and the relief requested herein will help ensure that the Trust and Trustee are not subject to any penalties or taxes.

23.     Schedule K-1 for Form 1041 (Trust federal tax return) requires the TIN for each Trust Beneficiary and the IRS instructions for Schedule K-1 for Form 1041 provide that each Trust Beneficiary's TIN must be set forth on the Schedule K-1. Failure to provide the TIN for a Trust Beneficiary on the Schedule K-1 for the Trust's federal tax return would potentially expose the Trust to a penalty of $100 for each such occurrence. Significantly, I.R.C. § 6722(a)(1) generally provides that a $100 penalty is imposed for each failure to furnish a correct "payee statement" that includes all of the information required to be shown on such payee statement. For this purpose, Treas. Reg. § 301.6722-1(d)(2)(i) provides that a "payee statement" includes each Trust Beneficiary's copy of the Schedule K-1 required to be attached to the Trust's federal income tax return Form 1041.

24.     The large majority of Total Claims, in terms of number and dollar amount have complied with the Section 11.19 Requirement.  The rights of Beneficiaries representing 78.5% of the Total Claims by number, and 95% of the Total Claims in terms of dollars will be unaffected

17

1925392.11

by this Motion. Additionally, a quick review of <u>Exhibit B</u> indicates that most of the Non-Responsive Claims are for de minimis amounts.

25.    Finally, the Trustee seeks the relief requested in this Motion so that the hunt for non-responsive Beneficiaries may come to an end. As extensively described herein, the Trustee, through BMC, has used some of the most advanced Skiptrace tools which are not available to the general public. It is the Trustee's assertion that if the Beneficiaries holding Final Non-Responsive Claims have not complied with the Section 11.19 Requirement by the time the Court is prepared to rule on this Motion, it is either because (i) that Beneficiary is purposefully not complying with the Section 11.19 Requirement, or (ii) that Beneficiary simply cannot, and will not be located. Though it is possible that there will be Beneficiaries that do not fit one of those two categories, the economics, and best interest of Beneficiaries in the aggregate simply does not support expending additional funds to locate and/or continue to seek compliance from non-responding Beneficiaries.

## The Possible Need for Future Relief

26.    As already addressed above, there are certain Non-Responsive Claims that will not be affected by this Motion (the Preference Action Defendants' claims and the Governmental Trust Beneficiaries' claims). Presumably, future settlements regarding the Preference Actions will lead to future Preference Action Defendant claims. The Trustee believes that if this Motion is granted, there may not be a need for future disqualification and exclusion of claims, but would like to reserve the right to do so given the existing and future Preference Action Defendants' claims and the Non-Responding Governmental Trust Beneficiaries' claims.

1925392.11

WHEREFORE, the Trustee respectfully requests that this Court enter an Order, in the

form that is attached hereto as Exhibit G, granting the Trustee the relief requested herein and for

any other further relief as this Court deems just and proper.

Dated: March 18, 2011                          Respectfully submitted,

                                               /s/ Brendan L. McPherson
                                               Paul D. Sinclair (Missouri Bar No. 26732)
                                               Dennis D. Palmer (Missouri Bar No. 21499)
                                               Andrew J. Nazar (Missouri Bar No. 57928)
                                               Brendan McPherson (Missouri Bar No. 60428)
                                               POLSINELLI SHUGHART, P.C.
                                               120 W. 12th Street, Suite 1700
                                               Kansas City, MO  64105
                                               Telephone (816) 421-3355
                                               Facsimile (816) 374-0509
                                               e-mail:  bmcpherson@polsinelli.com

1925392.11

19

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI
## KANSAS CITY DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INTERSTATE BAKERIES | ) |
| CORPORATION, et al., | ) Case No. 04-45814 (JWV) |
| | ) |
| Debtors. | ) Jointly Administered |

## DECLARATION OF TERRI MARSHALL

I, Terri Marshall, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am over 21 years of age, I have personal knowledge of the facts stated herein, and I am competent in all respects to give the testimony contained herein.

2.      I am employed by the BMC Group ("BMC") and my title is Director.

3.      U.S. Bank National Association, in its capacity as trustee (the "Trustee") of the IBC Creditor Trust (the "Trust") engaged BMC as a consultant to assist with certain duties of the Trustee under the IBC Creditors Trust Agreement (the "Trust Agreement").  In particular, BMC has worked closely with the Trustee to fulfill its duty under Section 11.9 of the Trust Agreement, which allows the Trustee to collect certain taxpayer information from beneficiaries of the Trust ("Trust Beneficiaries").

4.      I have reviewed the Motion of the Trustee Seeking an Order to Disallow Certain Nonresponding Creditor Beneficaries from Future Distribution of Trust Recoveries for Failure to Comply with Tax Related Obligations (the "Motion").  I understand that this Declaration is being filed in support of the Motion.

1929711.4

Case 2:13-cv-06447-WJM-MF   Document 8-8   Filed 01/20/14   Page 22 of 22 PageID: 116
Case 04-45814-can11   Doc 12613-1   Filed 03/18/11   Entered 03/18/11 17:08:36   Desc
Exhibit A - Declaration of Terri Marshall   Page 2 of 2

5.      I personally oversaw the work performed by BMC as it is described in the Motion, including specifically the "W-9 Procedures" as that term is used in the Motion.

6.      The description of BMC's work in the Motion, including the W-9 Procedures, is true, accurate and correct.

7.      Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct, this 18th day of March, 2011.


                                        _Terri Marshall_
                                        TERRI MARSHALL

1929711.4                               2