NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LIQUIDITY SOLUTIONS, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **PROCORP IMAGES, INC.,** <br><br> Defendant. | Civ. Docket No.: 13-6447 <br><br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Procorp Images, Inc. ("Procorp") moves to dismiss the first three causes of action in the Plaintiff's Complaint for failure to state a claim. (Moving Brief at 1) Plaintiff Liquidity Solutions, Inc. ("Liquidity") opposed. There was no oral argument. L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion is granted with respect to the Second Cause of Action only. The motion is denied with respect to the First and Third Causes of Action.

**I. FACTUAL BACKGROUND**

    This is a contract dispute involving the sale of two bankruptcy claims. On October 14, 2004, Plaintiff Liquidity entered into and executed two Assignments of Claim with Defendant Procorp. (Complaint at ¶ 4, Exhibit A to Complaint) The Assignments of Claim gave Plaintiff rights to two claims that Defendant had against Interstate Bakeries Corporation ("IBC"). IBC was a debtor in a Chapter 11 bankruptcy proceeding in the U.S Bankruptcy Court for the Western District of Missouri ("IBC Chapter 11"). (Complaint at ¶ 6) In short, Plaintiff claims that Defendant failed to uphold a contractual duty to forward a notice from the IBC Bankruptcy Trustee and that Plaintiff was ultimately barred from collecting on the

claims due this alleged breach of contract.

### A. Assignments of Claim

The two Assignments of Claim (the "Assignments") are identical except for the amount of the claims. (Exhibit A to Complaint) The two Assignments state that they are worth $17,500 and $194,866.57, for a total of $212,366.57. (*Id.* at ¶ 4)

One of the relevant passages in the Assignments states:

> Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand sue for, compromise and recover all such amounts as now are, or may hereafter become due and payable for or on account of the Claim herein assigned. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and its rights thereunder pursuant to this Assignment of Claim. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings. Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the Assignment of Claim and any payments or distributions on account of the Claim to the Assignees, including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consent. ***Assignor agrees to forward to Assignee all notices received from Debtor, the court or any third party with respect to the claim assigned herein, to vote the Claim assigned herein and to take such action with respect to the Claim in the Proceedings, as Assignee may from time to time request.*** (Certification of David Fishel ("Fishel Cert."), Exs. A & B) (emphasis added)

Plaintiff does not allege that it ever requested that Defendant forward any notices to it. The Assignments of Claim went on to state:

> Assignor hereby authorizes Assignee to file a notice of transfer pursuant to Rule 3001(e) of the Federal Rule of Bankruptcy Procedure (FRBP) with respect to the . . . claim, while Assignee performs its due diligence on the claim.

It is undisputed that Liquidity never filed the Rule 3001(e) notice of transfer for these claims with the Bankruptcy Court.

### B. Disallowance of Claims

In 2008, the Bankruptcy Court confirmed an Amended Joint Plan of Reorganization ("IBC Reorganization Plan"). (Certification of Thomas A. Franklin ("Franklin Cert.") at ¶ 3 and Attachment A)  The only relevant detail of the IBC Reorganization Plan was that it left open the possibility of collecting on the claims at issue in this case.  However, collection was dependent upon compliance with Section 11.19 of the Trust Agreement, which states, in relevant part:

> If any Beneficiary fails to provide the Trustee with a requested TIN . . . within ninety (90) days after the request, such failure shall be deemed a waiver of such Beneficiary's interest in this Trust Agreement and rights to distribution hereunder.  Proceeds that would have been distributed to such Beneficiary shall be distributed pro rata to the other Beneficiaries.

(Declaration of Michael Korik ("Korik Decl."), Exhibit A at ¶ 9)

In 2010, the IBC Bankruptcy Trustee diligently sent requests to the Beneficiaries of the IBC Trust for W-9's in compliance with Section 11.19. (*Id.* at ¶ 11)  A letter sent to all the Beneficiaries stated:

> If we do not receive your TIN, SSN or claim of exemption by November 1, 2010, you will not be entitled to receive your share, if any, of distributions from the Trust.  Failure to return a completed IRS Form W-9 by the deadline will be deemed a waiver of your interest, if any, in the Trust.  If your interest is waived, proceeds that would have been distributed to you will be distributed ratably to the other Beneficiaries of the Trust.

(*Id.* at ¶ 11(a))

In 2011, the Trustee filed a motion to disallow claims of beneficiaries who had not responded to the request for the tax identification ("the motion to disallow"). (Korik Decl., Exhibit A)  The claims at issue in this case were included in the motion to disallow because Procorp never responded to the Trustee's request for tax infor-

mation. The Bankruptcy Court granted the Trustee's motion to disallow, thus precluding Liquidity from collecting anything on the claims it purchased from Procorp. (Fishel Cert., Exhibit D)

It is not disputed that the IBC Trustee sent a notice requesting W-9 information for the claims at issue to Procorp at 359 Inverness Drive in Englewood, Colorado. The parties dispute whether the address was correct. (*Compare* Affidvit of Mark Stanke ("Stanke Aff.") at ¶ 6 *with* Korik Decl. at ¶ 3-6) No one forwarded the notices to Liquidity.

In 2013, Liquidity learned via e-mail from a representative of the IBC Chapter 11 Trust that the two relevant claims had been disallowed because Procorp never responded to the request for tax information. (Stanke Aff., Exhibit 3) This lawsuit followed.

## II. JURISDICTION, VENUE, and CHOICE OF LAW

This court has jurisdiction pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship and an amount in dispute of over $75,000. Liquidity is a corporation organized under the laws of the State of New Jersey and with a principal place of business in New Jersey. Procorp is an entity organized under the laws of the State of Colorado with a principal place of business in Colorado.

Venue is properly in New Jersey pursuant to the terms of the Assignments. Pursuant to the terms of the Assignments, the court applies the law of the state of New York.

## III. LEGAL STANDARD

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." *Lum*, 361 F.3d at 222 n.3 (*citing Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered. *See Burlington Coat Factory*, 114 F.3d at 1426.

A court may look outside of the pleadings if it converts a 12(b)(6) motion into a motion for summary judgment, *see* Fed.R.Civ.P. 12(d), but the decision to do so is "committed to the district court's discretion." *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 n. 11 (3d Cir. 1992).

Both parties submitted documents extrinsic to the Complaint. Defendant requested that the motion be converted to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). The court has closely considered both options and finds that it is more prudent to treat the motion as a Rule 12(b)(6) motion to dismiss. Although some of the additional documents have been referenced for the purposes of explaining the background of this case, the court confines its analysis to the Complaint and the attached Assignments, which are "integral" to the Complaint.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV. DISCUSSION

Defendant seeks dismissal of Counts 1 (Breach of Contract), 2 (Debt on a Book Account), and 3 (Promise to Pay Disallowed Claim) of the Complaint. For the reasons set forth below, the court will dismiss Count 2 only.

### A. First Cause of Action - Breach of Contract

The parties do not dispute that Liquidity would have been better situated to collect on the claims if it had filed the Rule 3001(e) notice of transfer of claim. The parties dispute whether the Assignments gave Plaintiff the right to rely upon Defendant's performance as insurance against its own negligence in that regard. Because the contract is ambiguous with respect to Defendant's duty to forward the W-9 request to Plaintiff, dismissal at this phase of the litigation is not appropriate.

Under New York law, the elements of a breach of contract claim are: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages. *Chase v. J.H. Electric of New York*, Inc., 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010). It is well settled that the court's role in interpreting a contract "is to ascertain the intention of the parties at the time they entered into the contract." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (N.Y. 2004). Interpretation of intent begins with the plain meaning of the language of the contract. *Id.* If the intent is clear from the language of the contract, then there is no need to look further. *Id.* "This may be so even if the contract is silent on the disputed issue." *Id.*

"Whether a contract is ambiguous presents a question of law for resolution by the court." *Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 24 (N.Y. App. Div. 2012). When the language of a contract is ambiguous, its construction presents a question of fact, which precludes summary dismissal on a Rule 12(b)(6) motion. *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012). "A contract is ambiguous if a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013). The court should not find the contract ambiguous where one party's interpretation would strain the contract language beyond its reasonable and ordinary meaning. *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (*quoting Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (N.Y. 1957)).

6

In the Complaint, Plaintiff alleges that Defendant failed to honor an agreement to forward the Trustee's request for the W-9 information. Plaintiff points to the sentence that states: "Assignor agrees to forward to Assignee all notices received from Debtor, the court or any third party with respect to the claim assigned herein, to vote the Claim assigned herein and to take such action with respect to the Claim in the Proceedings, as Assignee may from time to time request."[1]

Defendant argues that Defendant did not breach a contractual term because Plaintiff never requested that Defendant forward any court notices. It is unclear whether the contract required Plaintiff to make a request as a condition precedent to Defendant's duty to forward any notices. It is not clear if the parties intended for the phrase, "as Assignee may from time to time request" to apply to all three preceding infinitive clauses or only the immediately preceding one.[2]

When we look at the disputed sentence within the context of the contract as a whole, it still is not clear that Defendant had no duty to forward the W-9 request to Plaintiff. *Cf. Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 24 (N.Y. App. Div. 2012) ("The existence of ambiguity is determined by examining the entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed, with the wording viewed in the light of the obligation as a whole and the intention of the parties as manifested thereby."); Modern Law of Contracts § 8:2 ("It is a universal rule that a court should consider a contract as a whole and try to harmonize the various parts instead of trying to read various sections in isolation.").

In the sentences leading up to the disputed term, the parties lay out their rights and duties. Here, Defendant gives Plaintiff ownership over the claims. The ownership rights explicitly include the freedom to defend the value of the claims and the option to do nothing at all.

At the same time, Defendant makes promises to perform under certain circumstances; however, the parameters of Defendant's duties are not clearly defined.

---

[1] Hereinafter, this sentence will be referred to as "the disputed sentence."

[2] It is not appropriate for the court to decide how the placement of any commas here would dictate the intent of the parties. *Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 26 (N.Y. App. Div. 2012)("It is untenable that the parties would have intentionally left a key meaning of their agreements to such vagaries as placement and punctuation."); *Royal Ins. Co. (U.K.) Ltd. v. Ideal Mut. Ins. Co.*, 649 F. Supp. 130, 137 (E.D. Pa. 1986) *aff'd sub nom. Royal Ins. (U.K.) Ltd. v. Ideal Mut. Ins. Co.*, 806 F.2d 254 (3d Cir. 1986) and *aff'd sub nom. Appeal of Royal Ins. Co. (U.K.) Ltd.*, 806 F.2d 254 (3d Cir. 1986) ("[A]lthough punctuation is often used as an aid in contract interpretation, it should not be permitted to control a meaning which is evident from a consideration of the [contract] as a whole.").

The sentence immediately preceding the disputed sentence says: "Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the Assignment of Claim and any payments or distributions on account of the Claim to the Assignees, including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consent." This sentence indicates that Defendant did agree to a general affirmative duty to carry out, "without limitation" and "at its own expense" certain actions that are "necessary or desirable" to transfer the ownership rights. Forwarding the W-9 requests would have been desirable for Plaintiff.

Later in the contract, Defendant "authorizes" Plaintiff "to file a notice of transfer pursuant to Rule 3001(e) of the Federal Rule of Bankruptcy Procedure (FRBP) with respect to the . . . claim." Defendant argues that this clause imposed on Plaintiff a contractual duty to file the Rule 3001(e) notice of transfer of claim and that Plaintiff's failure to perform this duty precludes its ability to satisfy one of the elements of a breach of contract claim. *See Chase v. J.H. Electric of New York*, Inc., 893 N.Y.S.2d at 239. The plain language of the Assignments does not support Defendant's interpretation. The Assignments' language gives Plaintiff the right to freely file a Rule 3001(e) notice of transfer, but the language does not *require* Plaintiff to do anything.

Moreover, language in a preceding paragraph militates against Defendant's argument that Plaintiff had a duty to file a Rule 3001(e) notice. In an earlier paragraph, the contract states, "Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings."

Alternatively, Defendant claims that the contract should be held unenforceable because it would be a violation of public policy to hold Defendant responsible for Plaintiff's failure to file a critically important bankruptcy notice. Defendant cites to Restatement (Second) of Contracts § 178. The Restatement states, "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."

Defendant argues that the court cannot enforce this contract because Congress's use of the word "shall" in Rule 3001(e) means that the filing of the Rule 3001(e) notice of transfer of claim is "mandatory." It is true that the filing of the

8

Rule 3001(e) notice of transfer of claim is legally required in order to put the Bankruptcy Court and Trustee on notice of the change in ownership. *See In re Ellington*, 151 B.R. 90, 96 (Bankr. W.D.Tex. 1993). However, it could hardly be said that it would be a violation of public policy for parties to agree not to make the purchaser's filing of the notice of the Rule 3001(e) a required performance. Rule 3001(e) permits the seller to file the notice under certain circumstances, which may apply to this situation. *See* Rule 3001(e)(3).

In summary, the critical terms of the contract are ambiguous. Where the contract's terms are ambiguous, dismissal via Rule 12(b)(6) motion should be denied. *Maniolos*, 741 F. Supp. 2d at 567.

### B. Second Cause of Action – Debt on a Book Account

The Second Cause of Action is said to be for "debt on book account." New York law recognizes a Plaintiff's right to collect on an "account stated." *Citibank, N.A. v. Martin*, 807 N.Y.S.2d 284 (N.Y. Civ. Ct. 2005). Such a cause of action has two elements: (1) an account stated and (2) an independent basis for liability. *See Parker Chapin Flattau & Kimpl v. Daelen Corp.*, 59 A.D.2d 375, 377 (N.Y. App. Div. 1977); *Citibank, N.A. v. Martin*, 807 N.Y.S.2d 284 (N.Y. Civ. Ct. 2005).

Plaintiff has not plead the existence of an account stated. Under New York Law, "an account stated is an account balanced and rendered, with an assent to the balance expressed or implied; so that the demand is essentially the same as if a promissory note had been given for the balance." *Parker Chapin Flattau & Kimpl v. Daelen Corp.*, 399 N.Y.S.2d 222, 222 (N.Y. App. Div. 1977). In this case, there is no account stated because Defendant never assented to pay Plaintiff anything. Defendant only assented to give Plaintiff rights to two claims, which it undisputedly did do. Therefore, the court will dismiss the Second Cause of Action.

### C. Third Cause of Action – Promise to Repay Disallowed Claim by Procorp

Defendant makes no substantive argument to further its motion to dismiss Count 3. Therefore, the motion will be denied with respect to Count 3.

### V. CONCLUSION

For the reasons set forth above, Defendant's motion is hereby granted in part and denied in part. Count 2 of the Complaint is hereby dismissed. An appropriate

order follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 8, 2013**